The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Good morning, please be seated. Let's call the first case for this morning. Judge Healthy, you're booming, so maybe IT can turn you down just a speck. Just let them know. Thanks Judge. We can start by calling the first case. First case today is number 241107, Edward F. Groden v. NASDI, LLC. Will the attorney for the appellant please come up and introduce yourself on the record? Good morning, Megan Dart representing NASDI, LLC, the appellant. Are you going to reserve any time for rebuttal? You can come up and present your argument. Go ahead. Do you want to reserve time for rebuttal, Judge Healthy said? I would reserve maybe just a moment at the end for rebuttal if needed. Okay, I'll reserve you a minute. I'll reserve a minute.  Okay, you may proceed. Good morning. I'm sorry, Judge Healthy, we can't understand you. We just need IT to turn the volume down a little bit because we didn't understand how much time you were even giving her for rebuttal. One minute. Okay. A minute for rebuttal? That would be great. Thank you. Good morning, members of the panel, and may it please the court. I, Megan Dart, I'm representing NASDI, the appellant, in this case, and we're seeking reversal of a judgment that entered against NASDI at summary judgment. There are two issues that I'll discuss in this appeal. The first is the existence of bankruptcy automatic stay during the time that the pension funds withdrawal liability demand was served upon them. Well, the demand was written prior to creditors instituting bankruptcy. Isn't that correct? That is correct, Your Honor, and at the time of summary judgment, neither party addressed whether when it actually was mailed, and that actually was not, we weren't able to verify that based on the tracking from the UPS. Was it disputed? My client disputes it on the sense that it arrived on the 16th, and we have no information of why, if it was mailed on the 28th, that it would arrive on the 16th. That's even considering mail delays. Right, but do you dispute that it was mailed on the 28th? We don't believe it. We question it. I guess that's, we don't have knowledge either way, but. Disputed below, just to pin it down. Was it a material issue of disputed fact below? So it was addressed in the brief as stating that we questioned it, and it was not, that was an issue, we didn't consider it material, I don't think either party considered it material, and the reason we didn't think it was material is because even if they had mailed it on time, I would consider that still an automatic stay violation, it just, it would be technical What do you rely on to say that, is there any law that says the data received is what matters for the violation of the stay? So I looked at the, just the mailbox rule, there was cases not specifically regarding the bankruptcy stay, but there were cases about, there is a rebuttable presumption regarding mailing, and those cases were cited in the summary judgment briefs. Is it your, sorry Judge Thompson, please. I mean the logistical problem I'm having with that is that you're saying that a creditor who has no notice of a bankruptcy filing, and this is a bankruptcy that wouldn't have been initiated by the petitioner, and therefore he likely would have stated that this person was a potential creditor had it been the petitioner's filing, so what you're saying that a creditor with no notice of a bankruptcy filing who undertakes a mailing without any notice, is subject to the automatic void, I mean that makes no logistical sense. Well that's, that is the difference between a technical violation and a intentional violation, and that's what's, the Saris case, which is a case that I've cited to in this appeal, and It seems to me that if you're saying it's technical versus substantive, it would be crucial to pin down when it was mailed, and you're saying that that wasn't an issue below, so you're choosing to characterize it as what? I would characterize it as technical, because I don't think that the pension fund intentionally tried to violate the automatic stay, I wouldn't go that far, so I think if it's a technical violation, the consequences of a technical violation are still the same, that it is void, and there's just no punitive type of damages, and that's what, so that's why I would consider it not material, because it's a technical violation, it wasn't, I don't believe, and I think it's important to note just some of the procedural history, that NASD did not initiate this bankruptcy, it was an involuntary bankruptcy initiated by other creditors that was converted at a later date, so that November 5th time period, that's what's referred to as the gap period, and the automatic stay is still in place at that time, and that's not just in place to protect the debtor, but it's in place to protect the other creditors from the dissembling of the estate, from the other, from just allowing them the time to take a break and be able to focus on handling their affairs, and that's what, that's why they say it springs into effect immediately upon the filing, and so that can happen while something is in the mail, where it's, that's, that sense of automatic is, it can happen, you know, even if they did mail it on the 28th, that, giving them the benefit of the doubt, which I, you know, I still, my client and I, we very much doubt it was mailed on the 28th, given that, you know, the rebuttable presumption, but even if it was, during that time. I think that voiding the demand letter does what? So, voiding the demand, so the demand letter being served during the automatic stay, I think there's, I don't think there's a question of, you know, the substance of what was in the demand letter, so voiding the automatic stay, I mean, voiding the demand letter, I disagree with the lower court decision about the equitable tolling, that's something I very much disagree with, and I would say it would be void as in, as in, if it never happened, so if they didn't receive it prior to the bankruptcy filing, it wasn't served on them until after, and that's, that was something that was stipulated in the statements of facts, that it was delivered on that, because that delivery date was confirmed by the post office, at least that's what we know, the 16th, the stay was in effect, so we would, we submit that the, that notice was void, and then, therefore, everything that came after, all of those obligations that fell upon NASD to request arbitration to respond in any way, and then, I think the consequences would be that the pension fund, once NASD was out of bankruptcy, they should have renewed that demand letter, which they did not, they, they relied upon it as having been valid, and then remaining valid after the bankruptcy. If we leave aside, oh, can you hear me, can you hear me fine now, or? Oh, yes, your honor. Okay, my question is, just the demand letter, was that signed by an attorney, or it's not signed by an attorney? It was not signed by an attorney, it was assigned by the, the fund, well, I believe he is an attorney, but the fund manager, the fund director, so I believe he also is an attorney, but I don't think it was in that capacity. Okay, I'll ask that question from, from the other side as well, but my point is, if an attorney is signing a demand letter, let's assume, for purpose of, without conceding anything, he or she is an attorney, you know, we, we go to the mailbox rule, you know, there's nothing in the record for us to doubt it was actually mailed, then, you know, I don't have anything to add to that. So, so I, so, so your, your question is that if they, did they certify the date that they mailed it, you know, when they signed it on the 20th? If an attorney sends a letter and certifies I mailed a letter, you know, attorneys are officers of the court, they have codes of conduct, they're, you know, and, and let me say, this is not an issue that just has come in this case, it's happened in other cases before this court, that, you know, if an attorney sends a letter, you know, what is there to question him beyond, we just don't know if it got sent or not, so I'm just seeing if you have any thoughts about that. So I don't believe that they certified it in that way, I think they just relied on that it was dated as of the 28th, and that presumably it was mailed around that date, but it wasn't, I think even in the statements of fact from, or the affidavits on the other side, they didn't go that far and state, I know for a fact I mailed it on this date, because I don't think it was mailed. I don't think they, at that time, were trying to rely on it in that way. If you leave the date of mailing aside, if you leave that issue aside, don't you still have to establish that the demand letter is the type of notice that would violate the automatic stay? And how, how have you done that? That's correct. So I've looked at the statute, I've looked at 11 U.S.C. 362, where there's three, at least three different types of actions that it would violate, which would be the, that it's, you know, it's a claim that arose before the bankruptcy, so the claim arose when they stopped contributing to the plan, which was September 2020, so pre-bankruptcy, pre-letter, that's when the claim arose. It's the intention to collect a debt, it's seeking to, to gain property of the estate, meaning, you know, eventually to get paid. So I understand that you looked at the statute, but do you have any case law that supports that construction for a demand letter? Like, in the way I'm thinking of it, I think you need to establish it's more akin to something like a lien or, you know, some other instrument of litigation. So I, I dispute that, that it has to be a judicial, judicial act. The, the bankruptcy automatic stay statute. Do you have case law that supports that a demand letter falls within the realm of judicial action? So the, the Saris case explains how it's very broad, how it encompasses almost every single creditor action, which even, you know, phone call, phone calls can violate the automatic stay. Literally any, any action, if it's not accepted, and I think there was, so the, the, the Saris case does, does discuss that, and there's, there's other cases that I've, I've cited in my brief that if it's, if it's not, if it's not one of the exceptions, the presumption is generally that it, that it would be a violation, not the other. So I think the, the lower court was looking at it more other way around, which it's, it's true that there's no, we don't really have much case law that specifically shows this ERISA type demand letter, but it is, it is a demand letter. It's seeking, it's seeking to collect a debt, and it's not, and there are, in 362B, there are plenty of exceptions to that, but, but it's not one of them. Even the only one that addresses ERISA is one that discusses 401k loans, deductions. There's nothing that says that a pension fund can demand. Council, I know you had a second issue you wanted to bring to our attention. You have about two and a half minutes, so if you want to address that issue, up to you. Yes, Your Honor. So the, the other issue was the, the analysis of the statute 1383, where there's part A, they address that, just addressing that the employer has withdrawn, and then there's the separate issue of the construction, the special rules for construction companies. My issue is, it's, it's not that I'm saying that construction disputes about the construction exemption cannot, shouldn't be arbitrated. I, I, I don't dispute that. Our issue is that the pension fund, in their demand, they didn't state that, that they had any issue with the, the construction exemption that they, and I, and I think if I understand their argument correctly, their argument would be that they, they have no obligation to consider it whatsoever, even if they were fully in agreement that they believed the employer is a construction company, they can just disregard that, assert withdrawal liability, and then it falls squarely on the employer to, to assert it in response, and I believe that that's not the, the intent of the statute. Wouldn't the employer be in the best position to make the initial determination as to whether they believe that they fall within the purview of the exemption? So, I do disagree with that, and I, I, that's why I spent a lot of time at the summary judgment stage kind of highlighting the, the, the work agreements between the employers and the pension, where the pension fund does have a great, great amount of, plenty of information at their disposal to make, at least at the outset, a, you know, basic determination of whether, whether this company is in construction or not, and yes, like, a dispute may arise from there, but they, I think they have at least an obligation to look, to look at the issue and, and state, and not ignore it. Is there any law you cite to rely on that? There is, at this point, there is, there is really nothing, which is where, where at a different, none of the circuits have addressed it. So, yes, at the, at the lower court, we had looking, there was mostly district court. Okay, thank you, counsel. We have one minute for rebuttal. Let's hear that from Appellee's counsel, and please identify yourself before you start. Sure. Melissa Rennan for the New England Teams Pension Fund. Good morning. Just to address the question of the demand, I just want everybody to think about what was going on in the world in October of 2020. So, to sit here and critique how or where that demand, why it took so long to get there, we'll never know. We were six months into a global pandemic. I believe Mr. Grodin's affidavit attached to my motion for summary judgment said that the demand was mailed on the date that we're saying it was, and again, this was prior to any bankruptcy commencing. They had an attorney. They had a... Did Grodin have any notice that a bankruptcy may have been impending? No, Your Honor. The first notice we got of the bankruptcy was not until April of the following year when we had filed in the district court, not knowing a bankruptcy was ongoing. Plus, before that, there was a notice of default sent to the company. So, there were two more contacts with the company after the demand, after the bankruptcy was filed before we were actually notified through a stay that was filed in the district court proceeding. At that point, we stopped all proceedings. We filed a proof of claim in the bankruptcy. The case here stayed in the district court, and we waited. And then, when the bankruptcy was dismissed in October, we waited another six months before we reopened the case. And at any point in time during that proceeding from when the bankruptcy was dismissed to the case was reopened, NASD could have filed for arbitration and challenged that notice, which is the proper form to do so. There is a mandatory arbitration provision within ERISA that was amended by MEPA, the Multi-Employer Pension Plan Amendments Act, that says if you have a dispute within these sections, 1381 to 1399, you must file arbitration. The proper form to hear the dispute over the notice would have been an arbitration. They could have filed, and my response would have been this arbitration is untimely because you received a demand. And not only did they receive a demand, they received a complaint. They received a notice of default. There was a proof of claim filed. What is your argument that even a technical violation, in other words, receipt of the demand letter once the bankruptcy proceeding had been instituted, that in and of itself voids the demand letter? Well, I rely on the two cases that I cited, which is Slotkey and the Realty case that basically say that the demand only serves as notice. The demand technically has to say what they owe and what the schedule is for payment, and then you demand that payment. It does not initiate litigation, and it does not put a lien on anything. Therefore, those cases say that it's really immaterial to the bankruptcy. The bigger issues would have been to challenge the fact that we actually filed the automatic stay. That was never even addressed. And then if you want me to talk about the exemption, there is no case law whatsoever, and the district court addressed this, that we, the pension fund, have any obligation to address the building and construction industry exemption. That is a very detailed process that you have to go through. Saying that you're a construction company or citing whatever the collective bargaining agreement is addressed as, the heavy highway agreement, that is not proof that you are entitled to a construction industry exemption. What is proof is the employer raises the exemption. We ask for information. They submit documentation. They submit job descriptions. They submit affidavits. That is all examined at that point, and then a ruling is issued from the pension fund of whether or not the exemption is to be given. If it's not, that dispute also has to go to arbitration, and an arbitrator has to decide whether or not the exemption applies. It's not just checking a box. It's an extremely detailed process, and we've done it many times at many different companies, and if you do not raise it, you lose that right, which the district court said that has been waived. The pension fund would have no idea what the workers at this company do and whether or not they, under the statute, work to make or build a structure. That is what the exemption protects, not just I'm a construction company. I signed a heavy highway agreement. That is not how the case law reads, and the district court was very clear that they had absolutely no support for saying that the burden's on the pension fund, and again, didn't file for arbitration, so it cannot be raised now, and that is, as the case law says, a self-inflicted wound. You have to file for the arbitration in order to bring up these defenses. The construction exemption wasn't even a defense that they raised in the answer to the complaint. The very first time they raised that was in their motion for summary judgment. If we were to rule that the demand letter was void, do certain time constraints prevent you from, I guess, reinitiating action? Well, the action was already initiated. Even if the letter was void, we filed a complaint, so the complaint was initiated, and the burden... Is the appellant requesting that we void that proceeding also? I honestly don't know what the appellant is requesting by saying that the demand is not asking you to void. That's what I'm trying to figure out. Right, yeah. It's complicated. I would say that voiding the demand, which, again, was sent before the bankruptcy was ever filed or we ever had notice, it only goes to, did the pension fund... I mean, I'm sorry, did the employer have notice of the withdrawal liability? And, therefore, did they waive their right to file arbitration? So, again, I think it goes back to, once the case was reopened, after it was stayed, if they wanted to make that argument that the notice was served improperly or untimely or during a bankruptcy, they would have to then file the arbitration and go into arbitration and dispute whether or not the notice was valid, and then, therefore, is the district court proceedings still valid? But this is not the arena. The district court is not the arena to do that. It's arbitration. And it's been very clearly laid out in the case law. Anything else, counsel? No, that's really all I have. I did file a motion for sanctions in this case. I didn't know if you wanted to discuss that at all, but that's all I have. Any questions? Let me ask one more question because I'm still trying to figure out procedurally. Once you file the complaint, that would have been notice of the liability debt. Is there anything that says that the demand letter is a necessary precursor to filing a complaint? I don't want to misspeak. The demand notice basically is required by the statute to set off the proceedings and the deadlines for filing the arbitration. So arbitration, you can request, the employer can request information or say, can you please look at this again? I think the calculations are incorrect. And they can do a one request for information back to the pension fund. And then the pension fund, that request sets off another timeline for the pension fund to respond. But taking all that in, there's 120 days from the date that the notice is given to the date that you have to file for arbitration. And then I could file in the district court at any time during that 120 days to file a complaint to collect the withdrawal liability, but they still have the right to file for the arbitration. So the notice only sets off those deadlines for arbitration filing. It does not prevent a complaint from being filed in the district court to collect. Could they have moved to stay the proceeding in the district court to seek arbitration like we see in other actions? Yes. So you mean after it was reopened? Yes. Yes. So after it was reopened, they could have filed for arbitration and then we would have went to the district court and said we wanted another stay while the arbitration proceeded. Okay. Okay. Thank you. Thank you, counsel. Thank you for your time. We have one minute rebuttal from Ms. Stark. Thank you. I would just like to address back on the bankruptcy issue that what they're proposing is placing the burden back on the debtor, not on the offending creditor by making the debtor go through all these steps to undo the actions of the creditor where I think the case law is that the burden belongs on the creditor to ratify its actions. I'd also like to note that the demand letter is a critical step. It's the demand letter, the notice of default, then there's the district court proceeding. Did you raise that as a defense in the lawsuit itself? We did. We raised the bankruptcy issue and I think if the – I didn't argue that it should be void because I think it's clear that the lawsuit is void, but if they dismiss the lawsuit, that doesn't get us anywhere because we're just back – if the demand letter was valid, they just file another lawsuit. So I think that's really where we are. The demand letter is the important piece there. Okay. Any further questions for my colleagues? No, thank you. Okay. Thank you, counsel. We're going to adjourn briefly. Counsel, for the next case, please be ready and then we'll be back with the next panel. Thank you very much. Thank you very much. In this case, all rise. The court will take a brief recess.